24-2678
*In Re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*

# United States Court of Appeals
# For the Second Circuit

---

August Term 2025
Argued: November 20, 2025
Decided: May 4, 2026

No. 24-2678

---

OLD JERICHO ENTERPRISE, INC., 32T, LLC, BUCKS, INC., CHANDLER OIL-1 CORPORATION, COFFEE CUP FUEL STOP, INC., H&H ENTERPRISES, INC., HEINZ ENTERPRISES, INC., KOEHNENS STANDARD SERVICE, INC., MINERAL SPRING AVENUE GETTY, INC., MOX LLC, OKY LLC, PIT ROW, INC., POINTE SERVICE CENTER LLC, RED EAGLE, INC., VICTORY ENERGY, LLC, VILLAGE CENTER AUTO CARE, INC., W.L.F. AUTOMOTIVE, INC., WESCO, INC., ZARCO USA, INC., ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

v.

VISA, INC., MASTERCARD, INC.,

*Defendants-Appellees.*\*

---

\*The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from the United States District Court
for the Eastern District of New York
Nos. 05-md-1720; 20-cv-02394
Margo K. Brodie, *Chief Judge*.

---

Before:        JACOBS, LEVAL, and PARK, *Circuit Judges*.

In 2019, Visa and Mastercard agreed to pay $5.6 billion to settle a federal antitrust class action with a class of merchants that accepted payment cards during the class period. Appellants here (the "Old Jericho Plaintiffs") did not opt out of the Settlement Agreement. But a year later they filed their own putative class action complaint asserting state-law antitrust claims and seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations. They contend that their gasoline suppliers are the direct payors of the challenged fees and the appropriate class members. The district court (Brodie, *C.J.*) concluded that the Old Jericho Plaintiffs are members of the settlement class and the Settlement Agreement bars the claims they now assert.

We **AFFIRM**. First, we reject the Old Jericho Plaintiffs' contention that our prior decision in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), requires the district court to determine class membership solely by identifying the "direct payor" of the challenged fees. The district court did not clearly err in determining that the settling parties intended to include the Old Jericho Plaintiffs in the settlement class. Second, we conclude that the Old Jericho Plaintiffs' claims were validly released because they were adequately represented in the Settlement Agreement and rest on the same factual predicate as the other released claims.

2

————

CHRISTOPHER BATEMAN (Daniel Gifford *on the brief*), Cohen Milstein Sellers & Toll PLLC, New York, NY; Manuel J. Dominguez, Cohen Milstein Sellers & Toll PLLC, Palm Beach Gardens, FL, *for Plaintiffs-Appellants*.

KANNON K. SHANMUGAM (Kenneth A. Gallo *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Brette Tannenbaum, Nina Kovalenko, Gary R. Carney, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendant-Appellee Mastercard Incorporated*.

Michael S. Shuster, Demian A. Ordway, Jayme Jonat, Gregory J. Dubinsky, Holwell Shuster & Goldberg LLP, New York, NY; Matthew A. Eisenstein, Rosemary Szanyi, R. Stanton Jones, Arnold & Porter Kaye Scholer LLP, Washington, DC, *for Defendant-Appellee Visa Inc*.

————

PARK, *Circuit Judge*:

In 2019, Visa and Mastercard agreed to pay $5.6 billion to settle a federal antitrust class action with a class of merchants that accepted payment cards during the class period. Appellants here (the "Old Jericho Plaintiffs") did not opt out of the Settlement Agreement. But a year later they filed their own putative class action complaint asserting state-law antitrust claims and seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations. They contend that their gasoline suppliers are the direct payors of the challenged fees and the appropriate class members. The district court concluded that the Old

3

Jericho Plaintiffs are members of the settlement class and the Settlement Agreement bars the claims they now assert.

We affirm. First, we reject the Old Jericho Plaintiffs' contention that our prior decision in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), requires the district court to determine class membership solely by identifying the "direct payor" of the challenged fees. The district court did not clearly err in determining that the settling parties intended to include the Old Jericho Plaintiffs in the settlement class. Second, we conclude that the Old Jericho Plaintiffs' claims were validly released because they were adequately represented in the Settlement Agreement and rest on the same factual predicate as the other released claims.

## I. BACKGROUND

After nearly 15 years of litigation, Defendants agreed to settle a federal antitrust class action by paying over $5.6 billion for allegedly supra-competitive interchange fees. In exchange, class members agreed to release all claims arising out of or relating to the alleged conduct to the fullest extent permitted by federal law. The Settlement Agreement defines the class as "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [January 24, 2019]," with certain exceptions not relevant here. App'x at 207. The district court approved this settlement in 2019 and we affirmed in 2023. We assume familiarity with the facts and procedural history, which are set forth in our opinions in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 713-14 (2d Cir. 2023), and *In re Payment Card*

*Interchange Fee & Merchant Discount Antitrust Litigation*, 827 F.3d 223, 227-30 (2d Cir. 2016). We summarize here only the facts necessary to explain our decision in this appeal.

In a typical credit card transaction, when a customer gives a payment card to a merchant, the merchant transmits data to its bank (the acquiring bank), which forwards that information to the appropriate network (Visa or Mastercard), which relays the information to the bank that issued the customer's card (the issuing bank). *Fikes*, 62 F.4th at 713. The issuing bank then provides funds through the appropriate network to the acquiring bank, minus the interchange fee that Defendants charge. The acquiring bank in turn pays the merchant the purchase price minus a "merchant discount fee" that covers the interchange fee and an additional amount to compensate the acquiring bank. *Id.*

The class action complaint principally asserted antitrust claims under federal law on behalf of merchants who claimed to be injured by Defendants' interchange fees. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court "established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). Before settling, Defendants argued that the class plaintiffs did not directly purchase card acceptance services or directly pay the challenged interchange fees because there are intermediaries in the payment chain between the merchant and Defendants. So Defendants argued that the acquiring banks are the direct purchasers and that class plaintiffs are indirect purchasers without federal antitrust standing. In approving the settlement, the district court recognized that the

indirect-purchaser defense posed a litigation risk and awarded class counsel substantial attorneys' fees in part in consideration of this risk. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2019 WL 6888488, at *13-14 (E.D.N.Y. Dec. 16, 2019).

*Illinois Brick* bars indirect purchasers from asserting *federal* antitrust claims, but state antitrust laws may permit indirect-purchaser recovery. *California v. ARC Am. Corp.*, 490 U.S. 93, 105-06 (1989). The Old Jericho Plaintiffs are branded gasoline retailers operating in states that allow indirect purchasers to bring antitrust claims. They contract with large gas brands such as BP, Cenex, Chevron, and Shell ("Suppliers") for both gasoline and card acceptance services. When a customer uses a credit card to purchase gas, the Supplier acts as an intermediary between the Old Jericho Plaintiffs and the acquiring bank. On the front end, the Old Jericho Plaintiffs transmit data to the Suppliers, which then relay that information to the acquiring banks. And on the back end, the acquiring banks transfer funds to the Suppliers, which then remit the funds to the Old Jericho Plaintiffs after deducting fees that may include credit card processing fees and the wholesale price of fuel.

The Old Jericho Plaintiffs did not opt out of the Settlement Agreement. But in May 2020, after the opt-out period expired, they filed their own putative class action complaint asserting state-law indirect-purchaser antitrust claims seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations by Defendants. Defendants raised an affirmative defense that the Settlement Agreement bars the Old Jericho Plaintiffs' claims.

The Old Jericho Plaintiffs moved for summary judgment on whether they are bound by the release in the Settlement Agreement. In a memorandum and order signed September 5, 2024, the district court concluded that the Old Jericho Plaintiffs are members of the settlement class and bound by the release. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024) ("Old Jericho Order"). So the court entered judgment for Defendants on the Old Jericho Plaintiffs' claims. This appeal followed.

## II. DISCUSSION

We consider the Old Jericho Plaintiffs' arguments in two parts. First, the Old Jericho Plaintiffs contend that they are not part of the settlement class. They argue that under *Fikes*, the district court was required to identify the "direct payor" of the challenged fee for each transaction, which was the Supplier. Second, the Old Jericho Plaintiffs claim that even if they are part of the settlement class, the district court erred in concluding that the Settlement Agreement released the state-law claims they now seek to assert.

We reject both arguments. First, the district court's finding that the settling parties intended to include the Old Jericho Plaintiffs, rather than their Suppliers, in the settlement class is not clearly erroneous under *Fikes*. Second, the Old Jericho Plaintiffs' claims were validly released because they arise out of the same factual predicate as the other class members' claims and were adequately represented in the Settlement Agreement.

7

A.     Class Membership

"In reviewing a district court's interpretation of the terms of a settlement agreement, we review conclusions of law *de novo* and findings of fact for clear error."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011).   When a term in a settlement agreement is ambiguous, "principles governing the interpretation of contracts and judgments authorize reference to extrinsic evidence" to resolve the ambiguity and ascertain the settling parties' intent.  *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 37 (2d Cir. 1996). "A trial court's findings regarding the parties' intentions will be respected on appeal unless they are clearly erroneous."  *Id.* at 33.

The Old Jericho Plaintiffs urge a different standard.  They argue that the district court was not free to conduct its own inquiry into the settling parties' intentions and that our opinion in *Fikes* required the district court "to use 'federal antitrust standards' to 'identify the direct payor or payors in any given transaction' and deem that party the Settlement class member."  Reply Br. at 4 (quoting *Fikes*, 62 F.4th at 718).  So they ask us to review *de novo* whether the district court complied with our mandate in *Fikes*.  *Id.* at 4-5 n.1; *see Brown v. City of New York*, 862 F.3d 182, 184 (2d Cir. 2017) ("We determine *de novo* the meaning of a previous mandate of this Court.").

1.     Fikes *does not require the district court to use a "direct payor" test to determine class membership*

The Old Jericho Plaintiffs contend that our opinion in *Fikes* required the district court to "identify the direct payor or payors in any given transaction." Appellants' Br. at 29 (quoting *Fikes*, 62 F.4th at 718).  In support, they point to language in *Fikes* stating that "the

8

*only* entities that could fall within the class definition were those deemed to be *direct payors* of the challenged fees." *Id.* (quoting *Fikes*, 62 F.4th at 716).

This argument overreads our prior decision. We recognized in *Fikes* that "the word 'accepted' lends itself to ambiguity," and concluded that the class was ascertainable because this ambiguity could be resolved by "identifying the direct payor for each transaction." 62 F.4th at 716-17. But opinions are "read with a careful eye to context," and this language must be understood with reference to the "particular context" in which it appears and the "particular work" it does. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023).

*Fikes* addressed an ascertainability challenge to the class action settlement the Old Jericho Plaintiffs contest here. In deciding that issue, "[t]he only relevant inquiry is whether determinations as to class membership are 'objectively *possible*.'" *Fikes*, 62 F.4th at 717 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017)). In this context, we explained that the class definition is "objectively guided by federal antitrust standards," so considering class counsel's claim that they represent "the direct purchaser, and not every entity in the payment chain," we concluded that the ascertainability challenge failed because "Appellants do not contend that identifying the direct payor for each transaction is impossible." *Id.* at 716-17.

Our conclusion in *Fikes* about ascertainability does not supplant the general rule that the district court should resolve disputes over class membership by construing the Settlement Agreement "in accord

with the parties' intent" as required by New York contract law.[1] *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024) (quotation marks omitted). *Fikes* stated that the class definition is "objectively guided by federal antitrust standards," not that federal antitrust law replaces the parties' intent. 62 F.4th at 716. Moreover, recognizing that the inquiry into class membership might turn on facts not in the appellate record, we made "no ruling as to how damages should be allocated as between branded oil companies and their branded service station franchisees," leaving the district court to consider the issue on a "developed factual record." *Id.* at 727.

We thus reject the argument that *Fikes* reduced all disputes over class membership to a "direct payor" test. This argument conflates the different legal standards governing an ascertainability challenge and a district court's interpretation of a settlement agreement, and it ignores our instruction that the district court decide class membership based on a "developed factual record." *Id.*; *see, e.g.*, *Collins v. Harrison-Bode*, 303 F.3d 429, 434 (2d Cir. 2002) (concluding that a settlement agreement is ambiguous and remanding for "the district court to provide the parties an opportunity to present extrinsic evidence").[2]

---

[1] The Settlement Agreement provides that it "shall be governed, construed, enforced, and administered in accordance with the laws of the State of New York." App'x at 249.

[2] Nor did the district court abuse its discretion by declining to invoke judicial estoppel to bar Defendants from renouncing "the Direct Payor Test." Judicial estoppel typically requires that the party against whom it is being asserted "has succeeded in persuading a court to accept that party's

2.   *The district court did not clearly err in finding that the parties intended the Old Jericho Plaintiffs, not their Suppliers, to be members of the settlement class*

The district court concluded that "the term 'accepted' is ambiguous . . . because suppliers and gas stations can both credibly claim to have 'accepted' payment cards."  Old Jericho Order at *10. After recognizing that the class definition is objectively guided by federal antitrust standards, it turned to extrinsic evidence to decide whether the Old Jericho Plaintiffs or their Suppliers "accepted" payment cards within the meaning of the Settlement Agreement.  *See Revitalizing Auto Cmtys.*, 92 F.4th at 442 ("If a contract is ambiguous, extrinsic evidence of the parties' intent may be considered.").  The district court first considered contracts between the Old Jericho Plaintiffs and their Suppliers, many of which say that the Supplier authorizes the gas station to "accept" cards.  And it reasoned that "the way real-world transactions are conducted supports the conclusion that Old Jericho Plaintiffs . . . 'accept' payment cards" because in a prototypical transaction "the cardholder swipes her card at a gas station, or hands it to the gas station operator, and the gas station 'accepts' the card for payment at the point of sale."  Old Jericho Order at *12.  Further, many of the Old Jericho Plaintiffs contract directly with acquirers for ancillary businesses, such as convenience stores and restaurants, so they accept payment cards for many transactions

---

earlier position" because "absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity."  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (cleaned up).  As explained, this Court did not accept a "direct payor test."

where the Suppliers are not intermediaries. Considering this evidence, the court found that the Old Jericho Plaintiffs, not their Suppliers, "accepted" cards within the meaning of the Settlement Agreement.

Although the Old Jericho Plaintiffs argue that the district court should have considered contrary evidence about the parties' intent, we discern no clear error in the district court's determination that the settling parties intended the Old Jericho Plaintiffs to be class members. *See W. Alton Jones Found.*, 97 F.3d at 33.

B.      Release of Claims

"Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Together, these legal constructs allow plaintiffs to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement." *Id.* If these two requirements are satisfied, a class action settlement may "bar claims that were not and could not have been asserted in the class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). We agree with the district court that the Settlement Agreement satisfies both requirements.

The Old Jericho Plaintiffs allege that they suffered the same antitrust injury and are harmed by the same interchange fees as the rest of the settlement class. The different factual predicate they identify is "the presence or absence of an intermediary [*i.e.*, the Supplier] between the violator and the purchaser." Appellants' Br. at 65. But this argument ignores the fact that every merchant in the settlement class has an intermediary between it and Defendants. The

12

class plaintiffs allege that when a customer makes a payment, "the Merchant sends an electronic transmission to its Acquiring Bank or Third-Party Processor," which "then sends an electronic transmission to [Defendants'] Networks." Old Jericho Order at *14; *see supra* at 5. The Old Jericho Plaintiffs fail to explain why the presence of a *second* intermediary should be determinative. The class plaintiffs argue that they are direct purchasers with federal antitrust standing despite the presence of intermediaries, while the Old Jericho Plaintiffs assert that they are indirect purchasers and have only indirect-purchaser claims due to the presence of intermediaries.[3] We conclude, as the district court did, that the Old Jericho Plaintiffs are asserting claims based on a different legal theory but the same factual predicate as those in the Settlement Agreement.[4]

Nor are we persuaded by the Old Jericho Plaintiffs' argument that their claims were inadequately represented in the Settlement

---

[3] The parties settled partly to avoid deciding whether merchants or the acquiring banks are direct purchasers under federal antitrust law. This remains an open question: in opt-out litigation, the district court held that there is a "dispute of material fact as to whether merchants are direct purchasers of card-acceptance services" despite the presence of intermediaries. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 1014159, at *13 (E.D.N.Y. Mar. 8, 2024). This appeal is about membership in a class action settlement, not the underlying issues of federal antitrust law, and we express no opinion on this issue.

[4] The submissions of other gas retailers wishing to remain in the settlement class highlight that this is a legal, rather than factual, distinction. For example, Jack Rabbit LLC is a gas retailer similarly situated to the Old Jericho Plaintiffs but draws the opposite legal conclusion and seeks to remain in the settlement class.

13

Agreement. "[A]dequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim." *Wal-Mart*, 396 F.3d at 113. As we explained in *Fikes*, representation was adequate because both gas franchisees and franchisors "shared an interest in maximizing the recovery for all class members." 62 F.4th at 718. And under the Settlement Agreement, the Old Jericho Plaintiffs were compensated for the release of their claims by entitlement to "a pro rata share of the monetary fund 'in accordance with [their] relative economic interests,'" just like every other class member. *Id.* at 714.[5]

If the Old Jericho Plaintiffs wanted "to avoid the risk of being bound by the Settlement Agreement and the Release, the appropriate course of action was to timely opt out of the Class." Old Jericho Order at *15. They failed to do so, and we agree with the district court that the Settlement Agreement bars the claims they now try to assert.

### III. CONCLUSION

The judgment of the district court is affirmed.[6]

---

[5] A trust account has been established to ensure that the Old Jericho Plaintiffs receive their pro rata portion of the Settlement Amount at the conclusion of this appeal.

[6] Although this panel previously retained jurisdiction in this case, *Fikes*, 62 F.4th at 727 n.18, any subsequent appeal will be assigned to a new panel in the ordinary course.

14