# Case No. 24-2678

IN THE
## United States Court of Appeals
FOR THE SECOND CIRCUIT

In re: Payment Card Interchange Fee
and Merchant Discount Antitrust Litigation

This Document Refers to:
Old Jericho Enterprise, Inc. v. Visa, inc., No. 20-cv-2394
(E.D.N.Y.)(BMC)(JAM)
*(Caption continued on next page)*

On Appeal from the United States District Court
for the Eastern District of New York

**PLAINTIFFS-APPELLANTS' PETITION FOR PANEL
REHEARING OR REHEARING *EN BANC***

Christopher J. Bateman
Daniel Gifford
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
88 Pine St., 14th Floor
New York, NY 10005
(212) 838-7797

Manuel J. Dominguez
**COHEN MILSTEIN
SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Garden, FL 33408
(561) 515-2604
(561) 515-1401

*Attorneys for Plaintiffs-Appellants*

1

Old Jericho Enterprise, Inc., 32T, LLC, Bucks, Inc., Chandler Oil-1 Corporation, Coffee Cup Fuel Stop, Inc., H&H Enterprises, Inc., Heinz Enterprises, Inc., Koehnens Standard Service, Inc., Mineral Spring Avenue Getty, Inc., Mox LLC, OKY LLC, Pit Row, Inc., Pointe Service Center LLC, Red Eagle, Inc., Victory Energy, LLC, Village Center Auto Care, Inc., W.L.F. Automotive, Inc., Wesco, Inc., Zarco USA, Inc., on behalf of all other similarly situated

*Plaintiffs-Appellants,*

v.

Visa, Inc., Mastercard, Inc.,

*Defendants-Appellees.*

## INTRODUCTION AND RULE 40 STATEMENT

The panel's opinion wrongly sweeps Plaintiffs—and the putative class of indirect-purchaser branded gas retailers they seek to represent— into a direct-purchaser Settlement that was never intended to include them. As a result, thousands of small gas retailers are now bound by a Settlement in which their interests were not represented. Worse, the claims process Class Counsel designed lacks the basic data necessary to process branded retailers' claims—which is unsurprising, given that Class Counsel did not mean to include branded retailers in the Settlement to begin with. If the panel's opinion is left in place, a broad swath of the $5.5 billion Settlement class will go not only unrepresented but uncompensated for their injuries. Because the panel's decision needlessly introduces fundamental due process and adequacy concerns into the carefully crafted, $5.5 billion Settlement, it presents a matter of exceptional importance warranting reconsideration *en banc*.

## BACKGROUND

### The Direct-Purchaser Settlement

In 2019, the district court granted final approval to a settlement (the "Settlement") of a federal direct-purchaser antitrust class action

against Defendants Visa, Inc., Mastercard, Inc, and their member banks. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019). Class Plaintiffs were merchants who alleged that they had directly purchased credit card processing services from Defendants and had paid artificially inflated fees due to Defendants' anticompetitive conduct. *Id.* at \*1.

Class Counsel and Defendants made clear at final approval that the Settlement, which included all businesses that "accepted" Defendants' cards, applied to "only the first payer" of Defendants' fees to acquiring banks, as direct-purchaser Class Counsel had "sued for the first payer, the direct purchaser" of card processing services, and not every entity in the payment chain. J.A.1199-200 at 78:9-79:15; *see id.* at 90:25-91:20 (statement of Mastercard counsel that "it's whoever directly pays the fee to the acquirer. That's what I believe the planned administration says fairly read . . . . I think it's also true as a matter of federal antitrust law. It's the person that paid directly that has the claim").

A group of branded gas retailers appealed, on the basis that the word "accepted" in the Settlement was ambiguous. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 715 (2d Cir. 2023). The

4

branded retailers did not directly purchase card processing services from Defendants: their franchisors—large gas brands like Shell and BP—purchased those services and resold them to their branded retailers at a markup. *See* Pls.' Br. at 7-9. But because franchisees physically handled customers' cards, they argued it was unclear whether they or the gas brands "accepted" the cards within the meaning of the Settlement. *Fikes*, 62 F.4th at 715-16. That ambiguity, franchisees contended, caused the definition to fail Rule 23's ascertainability requirement and gave rise to fundamental intra-class conflicts between direct and indirect purchasers.

The *Fikes* Court rejected their arguments. The Court noted that the parties had expressly litigated and settled a direct-purchaser action under federal antitrust law—which provides damages to only direct purchasers—and so the "only entities that could fall within the class definition were those deemed to be direct payors of the challenged fees" to acquiring banks. *Id.* at 716. This interpretation resolved both branded retailers' concerns: it rendered the class ascertainable, and it avoided the intra-class conflict and adequacy issues that would have arisen if direct-purchaser Class Counsel had attempted to release claims it did not represent. *Id.* at 716-18. Based on this holding, the panel gave the district

5

court "the only marching order that matters" on remand: "identify the direct payor or payors in any given transaction." *Id.* at 718.

### *Old Jericho* **Plaintiffs' Indirect-Purchaser Action**

Following final approval of the Settlement, Plaintiffs brought this *indirect*-purchaser class action on behalf of branded gas retailers under the laws of various states that reject *Illinois Brick*'s ban on indirect-purchaser standing. *See* J.A.530; *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977). Plaintiffs alleged that their gas brands paid inflated card processing fees to Defendants and then passed those inflated fees on to Plaintiffs when reselling them card processing services. And Plaintiffs argued that, under *Fikes*'s holding and the settling parties' clear intent, they were indirect payors who did not release their claims. Pls.' Br. at 14-15.

The district court nonetheless dismissed Plaintiffs' action as barred by the Settlement. The Court ignored *Fikes*'s "direct payor" language entirely, *see id.* at 20-21; J.A.1087, and instead reinterpreted the word "accepted" in the Settlement afresh. After observing that the term is "susceptible to more than one reasonable interpretation"—and notwithstanding the Second Circuit's recent resolution of that very

ambiguity—the court said it would "consider[] extrinsic evidence to determine the intent of the parties." J.A.1099.

Despite announcing its task to effectuate "the intent of the parties," the district court failed to consider a single piece of the abundant "extrinsic evidence," cited at length in Plaintiffs' briefing, of both Class Counsel's and Defendants' clear intent to bind only direct payors. Instead, the district court relied on "plain-English meaning" to find that the branded retailer "accepts" cards because "the cardholder swipes her card at a gas station, or hands it to the gas station operator." J.A.1104-05.

Finally, the court rejected Plaintiffs' due process arguments under the law of release, which prevents Class Counsel from releasing unpled claims that lacked "adequacy of representation" in the underlying action. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). According to the court, because indirect purchasers, like direct purchasers, sought redress for "harm resulting from Defendants' anticompetitive conduct," direct-purchaser Class Counsel was free to release their claims. J.A.1111-12. In reaching this conclusion, the court failed to consider Class Counsel's express representation of only direct

7

purchasers' interests throughout the litigation and Settlement proceedings.

After the court's ruling, branded gas retailers were left to navigate a settlement process expressly designed to exclude them. Merchants that submitted claims were assigned claims volumes based on "data from the settling defendants"—namely, the merchants' account numbers with acquiring banks and/or affiliated payment processors. *See* Pls.' Reply at 23. But branded retailers do not contract with acquirers for their branded gas sales—they contract with their gas brands—so acquiring banks had no information regarding their (now) class transactions. And Class Counsel collected no data from gas brands that could help fill this gap— a deficiency that makes sense, given Class Counsel's repeated urging that it "represented only . . . the direct purchaser, and not every entity in the payment chain." *See Fikes*, 62 F.4th at 716 (alteration in original).

Not surprisingly, given these structural problems, when Plaintiffs filed claims against the Settlement following the court's ruling deeming them members of the Settlement class, their assigned claims volumes were grossly deflated. For example, the claims-administration process failed to identify over *99 percent* of the claims volume belonging to two of

8

the largest Plaintiffs. Pls.' Reply at 24-25.

While Plaintiffs tried—and failed—to navigate a Settlement process that could not accommodate them, they simultaneously filed this timely appeal.

## The Panel Opinion

The panel recognized *Fikes*'s holding "that the class was ascertainable because this ambiguity [in the word 'accepted'] could be resolved by 'identifying the direct payor for each transaction.'" Op. at 9 (quoting *Fikes*, 62 F.4th at 716-17). And the panel accepted that gas brands—not branded retailers like Plaintiffs—are the "direct payors of the challenged fees." *Id.* at 8-9 (quoting *Fikes*, 62 F.4th at 716). But the panel nonetheless affirmed the district court. It did so by reinterpreting *Fikes*'s direct payor test to narrowly resolve ascertainability—that is, whether "determinations as to class membership are 'objectively possible'" *Id.* at 9 (quoting *Fikes*, 62 F.4th at 717)[1]—without requiring the district court to *use* this ascertainable definition on remand. Instead, the

---

[1] *See also* Op. at 9 ("[C]onsidering class counsel's claim that they represent 'the direct purchaser, and not every entity in the payment chain,' we concluded that the ascertainability challenge failed because 'Appellants do not contend that identifying the dirಗect payor for each transaction is impossible.'" (quoting *Fikes*, 62 F.4th at 716-17)).

panel held that the district court was empowered to "resolve disputes over class membership by construing the Settlement Agreement" anew "'in accord with the parties' intent' as required by New York contract law." Op. at 9-10 (quoting *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024)).

Next, the panel found "no clear error in the district court's determination that the settling parties intended the Old Jericho Plaintiffs to be class members" despite their indirect payor status. Op. at 11-12. But despite its passing acknowledgement that the settling parties' intent controls this inquiry, the panel did not reference a single statement of the settling parties—which uniformly demonstrated that the parties intended "acceptance" to refer to the "direct payor." Instead, the panel endorsed the district court's colloquial reinterpretation of the word "acceptance" by reference to physical card handling. Op. at 11 ("'[T]he way real-world transactions are conducted supports the conclusion that Old Jericho Plaintiffs . . . "accept" payment cards' because in a prototypical transaction 'the cardholder swipes her card at a gas station, or hands it to the gas station operator, and the gas station "accepts" the card for payment at the point of sale.'" (quoting J.A.1104-

10

05)).

Finally, the panel dismissed in cursory fashion the constitutional adequacy issues that arose from including indirect-purchaser branded retailers' claims in the direct-purchaser Settlement. The panel held that "representation was adequate because both gas franchisees and franchisors 'shared an interest in maximizing the recovery for all class members.'" Op. at 14 (quoting *Fikes*, 62 F.4th at 718). And the panel concluded that Plaintiffs would be "compensated for the release of their claims . . . just like every other class member." *Id.* at 14. But the panel again ignored Plaintiffs' voluminous evidence that Class Counsel had a) *expressly disclaimed* representing the interests of indirect payors like Plaintiffs, and b) designed a direct-purchaser claims-administration process without gas brands' data, and which branded retailers cannot reasonably access.

Plaintiffs now seek rehearing or rehearing *en banc* to prevent thousands of indirect-purchaser retailers from being bound by a direct-purchaser Settlement without adequate representation or any feasible opportunity to be "compensated for the release of their claims." Op. at 14.

11

# ARGUMENT

## I. The Panel Opinion Sweeps Thousands of Branded Retailers into a Direct-Purchaser Settlement Without Constitutionally Adequate Representation

The panel's opinion deems thousands of indirect-purchaser branded retailers members of a direct-purchaser Settlement solely because those branded retailers physically accepted credit cards. But the panel ignored the overwhelming evidence that neither Class Counsel nor Defendants ever intended branded retailers to be bound by the Settlement. This caused the panel to overlook the grave constitutional issues that result from binding branded retailers to the Settlement without representation—including Plaintiffs' concrete evidence that the Settlement was not designed to, and is not capable of, accommodating their claims. To avoid subjecting branded retailers to precisely the "uncompensated sacrifice" that the law of release prohibits, this Court should grant rehearing. *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982).

### A. The Panel Ignored the Clear Intent of the Settling Parties to Bind Direct Payors Only

As the panel recognized, even if *Fikes* did not control, the district court was required to interpret the Settlement in accordance with the

12

settling parties' intent. Op. at 8 ("When a term in a settlement agreement is ambiguous, 'principles governing the interpretation of contracts and judgments authorize reference to extrinsic evidence' to resolve the ambiguity and ascertain the settling parties' intent.'" (quoting *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 37 (2d Cir. 1996))).

This should have been a straightforward and uncontroversial inquiry: *every statement of the settling parties* across years of litigation emphasized Class Counsel's and Defendants' intent that *"only the merchant that is the more direct payor of the interchange fee can recover."* Br. of Defs.-Appellees at 24, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 20-339 (2d. Cir. Oct. 15, 2020), ECF No. 209 ("Defs.' 2d Cir. Br.") (emphasis added). These statements of party intent include:

- Class Counsel's statement at final approval that the Settlement applied to "only the first payer" of Defendants' fees, as Class Counsel had "sued for the first payer, the direct purchaser" of card processing services, and not every entity in the payment chain. J.A.1199-200 at 78:9-79:15.

- Class Counsel's statement at final approval that "the first payer" is "all we can sue for [under *Illinois Brick*.] And that's who we represent." J.A.1200 at 79:12-13.

- Defendant Mastercard's statement at final approval, when asked "[w]ho owns the claim" as between a gas brand and a branded retailer, that "it's whoever directly pays the fee to the acquirer. That's what I believe the planned administration says fairly read . . . . I think it's also true as a matter of federal antitrust law. *It's the person that paid directly that has the claim*." J.A.1211-12 at 90:25-91:20 (emphasis added).

- Defendants' statement in their *Fikes* brief that "as the parties have long understood about the settlement, only the merchant that is the more direct payor of the interchange fee can recover . . . . And it is that merchant—and no other—that is encompassed in the class definition." Defs.' 2d Cir. Br. at 24; *see id.* at 34 ("If [a] non-class member has a claim—for example, because it is an indirect payor with a claim under state law—it will retain that claim.").

- Class Counsel's statement at oral argument before the Second Circuit in *Fikes* that "we only brought this case on direct payer merchants under federal law. . . . Indirects are not mentioned at all in our case." J.A.1898 at 51:12-52:3.

- Mastercard's statement at the Second Circuit *Fikes* oral argument that "[e]veryone . . . agreed from the outset that this case . . . was being brought on behalf of direct purchasers and not indirect purchasers." J.A.1904 at 73:7-11.

Indeed, at oral argument in *Fikes*, Mastercard's counsel was even more explicit about Plaintiffs' case:

> I think one thing that is important to remember is that if, say, a brand operator ultimately turns out not to be able to prevail here, that brand operator is not going to be within the class and as a result is not going to be subject to the releases. And that brand operator will be free to proceed in a separate action. *And . . . there is at least one of those separate actions,*

14

> *the Old Jericho case, that is currently proceeding. In our view, that case is a case involving indirect purchaser claims . . . .*

J.A.1906 at 82:15-25 (emphasis added). As these statements make plain, the settling parties' intent was *always* to bind direct payors, and *never* to include indirect payors like Plaintiffs.

But despite acknowledging that "the settling parties' intent" controls the interpretive inquiry, Op. at 8, 11-12, the panel never acknowledged a single one of these statements. Instead, the panel cast party intent aside and affirmed the district court's colloquial interpretation of "acceptance" based on "the way real-world transactions are conducted"—that is, which party physically handles a credit card. Op. at 11 (quoting J.A.1104-05). Neither the panel nor the district court explained how this colloquial interpretation bore on the relevant question—the intent of the settling parties—or how it could be squared with the parties' unanimous urging that only direct payors would be bound.[2] By categorically ignoring the only evidence that the panel should

---

[2] The panel—like the district court—also noted that "contracts between the Old Jericho Plaintiffs and their Suppliers" sometimes "say that the Supplier authorizes the gas station to 'accept' cards." *Id.* This is a red herring: neither Plaintiffs nor their Suppliers are "settling parties," and *their* interpretation of "acceptance" in *their* supply agreements is wholly

have—by its own standard—considered, the panel erred as a matter of law and assigned Settlement claims to indirect purchasers that the settling parties never intended to include. *See, e.g.*, *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (factfinder commits error of law when it "totally overlook[s]" or "seriously mischaracterize[s]" important facts).

### B. The Panel Opinion Binds Branded Retailers to a Settlement That Is Not Capable of Including Them

The panel's decision to ignore settling party intent and implement its own, colloquial interpretation of "acceptance" is itself a clear error of law meriting rehearing. But it also creates a more fundamental constitutional issue for which *en banc* review is warranted: the inclusion of thousands of indirect-purchaser retailers in a direct-purchaser Settlement without even nominal representation or any reasonable chance to recover on their claims.

As the panel recognized, Class Counsel's "authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." Op. at 12 (quoting *Wal-Mart Stores*, 396 F.3d at 106). That is, class action plaintiffs may release claims only if (i) they

---

irrelevant to the party-intent inquiry as between Class Counsel and Defendants.

"share the same integral facts as settled claims" and (ii) "the released claims are adequately represented prior to settlement." *Id.*

A simple application of this standard makes clear that Class Counsel lacked the authority to release Plaintiffs' indirect claims. Indeed, Class Counsel did not merely fail to "adequately represent[]" Plaintiffs' claims—they repeatedly made clear that they did not represent their interests *at all. See Fikes*, 62 F.4th at 716-17 (quoting Class Counsel's claim that it "represent[s] only . . . the direct purchaser, and not every entity in the payment chain" (alteration in original)); *supra* Section I.A (quoting similar statements by Class Counsel). This express failure to protect Plaintiffs' distinct interests as indirect purchasers is dispositive of the adequacy inquiry. *See Wal-Mart*, 396 F.3d at 110 (noting that adequacy is evaluated by "an examination of the interests of the settling plaintiffs").[3]

---

[3] In attempting to justify its holding, the panel erred by relying on the fact that Jack Rabbit LLC—an indirect purchaser from a state that follows *Illinois Brick*'s prohibition on indirect purchaser damages claims—argued for inclusion in the settlement class. *See* Op. at 13 n.4. Unlike Plaintiffs, Jack Rabbit has no legal basis to pursue damages claims against under either state or federal law—meaning that any recovery at all from the Settlement would be a windfall. *See* Pls.' Br. at 40 n.10; Pls.' Reply at 21 n.7. As the panel itself recognized, it is the legal

Class Counsel's inadequate representation of branded retailers' interests is far from abstract. Plaintiffs' briefing identified concrete prejudice that will result if they are swept into the direct-purchaser Settlement. Most concerningly, the panel's holding runs headlong into the structure of the claims process created by Class Counsel. As Plaintiffs learned when seeking to file provisional claims, the Settlement is neither designed to nor practically capable of accommodating them. When filing a claim on the approved Settlement administration website, a merchant is assigned a claim volume based on "data from the settling defendants"— namely, the merchant's account numbers with acquiring banks and/or affiliated payment processors. *See* Pls.' Reply at 23. Moreover, though a merchant may contest its assigned claim volume, the dispute procedure is expressly designed to identify *direct payments to acquirers*:

> The best way for you to assist the Class Administrator in locating additional Interchange Fees Paid for your business is to provide copies of monthly statements from your Merchant Services Processor . . . . This Merchant Services Processor is also sometimes called an "acquirer." The Merchant Services

---

doctrines of "identical factual predicate" and adequacy of representation that together permit the release of absent class members' claims. Under those doctrines, Jack Rabbit's desire to participate in the Settlement says nothing about whether Plaintiffs—who possess viable independent claims—are properly included within that class or whether it is appropriate to extinguish their claims through the Settlement.

> Processor is often a bank . . . [and] could also be a specialist firm such as Fiserv . . . .

*Id.* (alterations in original). The entire Settlement process thus assumes that any claimant will be the "direct payor" of the challenged fees *to the acquirer*, and not an indirect purchaser further down the chain of transactions.

The predictable result of a process designed for direct payors is that indirect payors like Plaintiffs have been excluded. For their branded sales (which represent the vast majority—and, for some branded retailers, all—of their payment card transaction volume), Plaintiffs do not have Merchant Services Processor numbers, as they do not use acquiring banks—they pay fees to their gas brands. *See* Pls.' Br. at 7-9. To adequately account for branded retailers' claims volume, Class Counsel would have needed to acquire data from the gas brands on their resales of card-processing services to branded retailers. But Class Counsel—who never intended nor expected to accommodate indirect claims—of course did not do so. As a result, though numerous Plaintiffs have commenced the claims filing process, their assigned claim volumes—if any—have been grossly deflated by the exclusion of their indirect payments, and no Plaintiff has successfully accessed its claims

volume through the direct-purchaser-oriented appeal process. *See* Pls.'
Reply at 24; *supra* at 8-9. For the thousands of branded retailers across
the country (many of which are small businesses) that are not
represented by counsel, their odds of accessing any fair recovery under
the Settlement are next to zero.

Plaintiffs' experiences in the claims-administration process are
concrete proof of the problems that arise when parties are shunted into a
class-action settlement without adequate (or any) representation. The
panel, however, simply ignored this evidence[4]—just as it ignored
Plaintiffs' voluminous evidence of clear party intent. Instead, it held in
conclusory fashion that "the Old Jericho Plaintiffs were compensated for
the release of their claims by entitlement to 'a pro rata share of the
monetary fund 'in accordance with [their] relative economic interests,'
just like every other class member." Op. at 14 (quoting *Fikes*, 62 F.4th at
714).

---

[4] The panel declined to consider the declarations that two Plaintiffs
submitted (in response to Defendants' erroneous allegation in their
response brief that "[n]one of the Old Jericho Plaintiffs even attempted
to file a claim" on the Settlement, Defs.' Br. at 31 n.10), demonstrating
that the claims-administration process had failed to identify over *99
percent* of their claims volume*, see* Pls.' Reply at 24; *supra* at 8-9.

In fact, the opposite is true: thousands of branded retailers across the country will receive little to no compensation for the release of their claims—much *unlike* every other class member. This is the precise "advantage to the class . . . by the uncompensated sacrifice of claims of members" that the law of release in the class action context forbids. *TBK,* 675 F.2d at 461 (alteration in original) (quoting *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 19 (2d Cir. 1981)). The panel may understandably desire to bring closure to a case that has now spanned two decades. But this desire for finality cannot justify disregarding the fundamental unfairness of a Settlement structure that excludes and prejudices Plaintiffs. To prevent infecting a $5.5 billion Settlement with systemic and pervasive constitutional failings, rehearing is necessary.

## CONCLUSION

For the foregoing reasons, the Court should vacate the panel opinion and grant rehearing.

DATED this 18th day of May, 2026

*/s/ Christopher J. Bateman*

21

Christopher J. Bateman
Daniel Gifford
COHEN MILSTEIN SELLERS &
TOLL PLLC
88 Pine St., 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
cbateman@cohenmilstein.com
dgifford@cohenmilstein.com

Manuel J. Dominguez
COHEN MILSTEIN SELLERS &
TOLL PLLC
11780 U.S. Highway One,
Suite N500
Palm Beach Gardens, FL 33408
Tel: (561) 515-2604
Fax: (561) 515-1401
jdominguez@cohenmilstein.com

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because it contains 3897 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).  I relied on the word count of Microsoft Word in preparing this certificate.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because the brief – in both its text and its footnotes – has been prepared in 14-point Century Schoolbook font.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: May 18, 2026                             s/ *Christopher J. Bateman*
                                                Christopher J. Bateman

# EXHIBIT A

24-2678
*In Re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*

# United States Court of Appeals
# For the Second Circuit

August Term 2025
Argued: November 20, 2025
Decided: May 4, 2026

No. 24-2678

OLD JERICHO ENTERPRISE, INC., 32T, LLC, BUCKS, INC.,
CHANDLER OIL-1 CORPORATION, COFFEE CUP FUEL
STOP, INC., H&H ENTERPRISES, INC., HEINZ
ENTERPRISES, INC., KOEHNENS STANDARD SERVICE,
INC., MINERAL SPRING AVENUE GETTY, INC., MOX
LLC, OKY LLC, PIT ROW, INC., POINTE SERVICE
CENTER LLC, RED EAGLE, INC., VICTORY ENERGY,
LLC, VILLAGE CENTER AUTO CARE, INC., W.L.F.
AUTOMOTIVE, INC., WESCO, INC., ZARCO USA, INC.,
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

v.

VISA, INC., MASTERCARD, INC.,

*Defendants-Appellees.**

*The Clerk of Court is respectfully directed to amend the caption
accordingly.

Appeal from the United States District Court
for the Eastern District of New York
Nos. 05-md-1720; 20-cv-02394
Margo K. Brodie, *Chief Judge*.

Before:         JACOBS, LEVAL, and PARK, *Circuit Judges*.

In 2019, Visa and Mastercard agreed to pay $5.6 billion to settle a federal antitrust class action with a class of merchants that accepted payment cards during the class period. Appellants here (the "Old Jericho Plaintiffs") did not opt out of the Settlement Agreement. But a year later they filed their own putative class action complaint asserting state-law antitrust claims and seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations. They contend that their gasoline suppliers are the direct payors of the challenged fees and the appropriate class members. The district court (Brodie, *C.J.*) concluded that the Old Jericho Plaintiffs are members of the settlement class and the Settlement Agreement bars the claims they now assert.

We **AFFIRM**. First, we reject the Old Jericho Plaintiffs' contention that our prior decision in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), requires the district court to determine class membership solely by identifying the "direct payor" of the challenged fees. The district court did not clearly err in determining that the settling parties intended to include the Old Jericho Plaintiffs in the settlement class. Second, we conclude that the Old Jericho Plaintiffs' claims were validly released because they were adequately represented in the Settlement Agreement and rest on the same factual predicate as the other released claims.

2

————

CHRISTOPHER BATEMAN (Daniel Gifford *on the brief*), Cohen Milstein Sellers & Toll PLLC, New York, NY; Manuel J. Dominguez, Cohen Milstein Sellers & Toll PLLC, Palm Beach Gardens, FL, *for Plaintiffs-Appellants*.

KANNON K. SHANMUGAM (Kenneth A. Gallo *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Brette Tannenbaum, Nina Kovalenko, Gary R. Carney, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, *for Defendant-Appellee Mastercard Incorporated*.

Michael S. Shuster, Demian A. Ordway, Jayme Jonat, Gregory J. Dubinsky, Holwell Shuster & Goldberg LLP, New York, NY; Matthew A. Eisenstein, Rosemary Szanyi, R. Stanton Jones, Arnold & Porter Kaye Scholer LLP, Washington, DC, *for Defendant-Appellee Visa Inc*.

————

PARK, *Circuit Judge*:

In 2019, Visa and Mastercard agreed to pay $5.6 billion to settle a federal antitrust class action with a class of merchants that accepted payment cards during the class period. Appellants here (the "Old Jericho Plaintiffs") did not opt out of the Settlement Agreement. But a year later they filed their own putative class action complaint asserting state-law antitrust claims and seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations. They contend that their gasoline suppliers are the direct payors of the challenged fees and the appropriate class members. The district court concluded that the Old

3

Jericho Plaintiffs are members of the settlement class and the Settlement Agreement bars the claims they now assert.

We affirm. First, we reject the Old Jericho Plaintiffs' contention that our prior decision in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023), requires the district court to determine class membership solely by identifying the "direct payor" of the challenged fees. The district court did not clearly err in determining that the settling parties intended to include the Old Jericho Plaintiffs in the settlement class. Second, we conclude that the Old Jericho Plaintiffs' claims were validly released because they were adequately represented in the Settlement Agreement and rest on the same factual predicate as the other released claims.

## I. BACKGROUND

After nearly 15 years of litigation, Defendants agreed to settle a federal antitrust class action by paying over $5.6 billion for allegedly supra-competitive interchange fees. In exchange, class members agreed to release all claims arising out of or relating to the alleged conduct to the fullest extent permitted by federal law. The Settlement Agreement defines the class as "all persons, businesses, and other entities that have accepted any Visa-Branded Cards and/or Mastercard-Branded Cards in the United States at any time from January 1, 2004 to the Settlement Preliminary Approval Date [January 24, 2019]," with certain exceptions not relevant here. App'x at 207. The district court approved this settlement in 2019 and we affirmed in 2023. We assume familiarity with the facts and procedural history, which are set forth in our opinions in *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 713-14 (2d Cir. 2023), and *In re Payment Card*

4

*Interchange Fee & Merchant Discount Antitrust Litigation*, 827 F.3d 223, 227-30 (2d Cir. 2016). We summarize here only the facts necessary to explain our decision in this appeal.

In a typical credit card transaction, when a customer gives a payment card to a merchant, the merchant transmits data to its bank (the acquiring bank), which forwards that information to the appropriate network (Visa or Mastercard), which relays the information to the bank that issued the customer's card (the issuing bank). *Fikes*, 62 F.4th at 713. The issuing bank then provides funds through the appropriate network to the acquiring bank, minus the interchange fee that Defendants charge. The acquiring bank in turn pays the merchant the purchase price minus a "merchant discount fee" that covers the interchange fee and an additional amount to compensate the acquiring bank. *Id.*

The class action complaint principally asserted antitrust claims under federal law on behalf of merchants who claimed to be injured by Defendants' interchange fees. In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court "established a bright-line rule that authorizes suits by *direct* purchasers but bars suits by *indirect* purchasers." *Apple Inc. v. Pepper*, 587 U.S. 273, 279 (2019). Before settling, Defendants argued that the class plaintiffs did not directly purchase card acceptance services or directly pay the challenged interchange fees because there are intermediaries in the payment chain between the merchant and Defendants. So Defendants argued that the acquiring banks are the direct purchasers and that class plaintiffs are indirect purchasers without federal antitrust standing. In approving the settlement, the district court recognized that the

5

indirect-purchaser defense posed a litigation risk and awarded class counsel substantial attorneys' fees in part in consideration of this risk. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2019 WL 6888488, at *13-14 (E.D.N.Y. Dec. 16, 2019).

*Illinois Brick* bars indirect purchasers from asserting *federal* antitrust claims, but state antitrust laws may permit indirect-purchaser recovery. *California v. ARC Am. Corp.*, 490 U.S. 93, 105-06 (1989). The Old Jericho Plaintiffs are branded gasoline retailers operating in states that allow indirect purchasers to bring antitrust claims. They contract with large gas brands such as BP, Cenex, Chevron, and Shell ("Suppliers") for both gasoline and card acceptance services. When a customer uses a credit card to purchase gas, the Supplier acts as an intermediary between the Old Jericho Plaintiffs and the acquiring bank. On the front end, the Old Jericho Plaintiffs transmit data to the Suppliers, which then relay that information to the acquiring banks. And on the back end, the acquiring banks transfer funds to the Suppliers, which then remit the funds to the Old Jericho Plaintiffs after deducting fees that may include credit card processing fees and the wholesale price of fuel.

The Old Jericho Plaintiffs did not opt out of the Settlement Agreement. But in May 2020, after the opt-out period expired, they filed their own putative class action complaint asserting state-law indirect-purchaser antitrust claims seeking damages for the same allegedly supra-competitive interchange fees based on the same alleged antitrust violations by Defendants. Defendants raised an affirmative defense that the Settlement Agreement bars the Old Jericho Plaintiffs' claims.

6

The Old Jericho Plaintiffs moved for summary judgment on whether they are bound by the release in the Settlement Agreement. In a memorandum and order signed September 5, 2024, the district court concluded that the Old Jericho Plaintiffs are members of the settlement class and bound by the release. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 4224160 (E.D.N.Y. Sept. 18, 2024) ("Old Jericho Order"). So the court entered judgment for Defendants on the Old Jericho Plaintiffs' claims. This appeal followed.

## II. DISCUSSION

We consider the Old Jericho Plaintiffs' arguments in two parts. First, the Old Jericho Plaintiffs contend that they are not part of the settlement class. They argue that under *Fikes*, the district court was required to identify the "direct payor" of the challenged fee for each transaction, which was the Supplier. Second, the Old Jericho Plaintiffs claim that even if they are part of the settlement class, the district court erred in concluding that the Settlement Agreement released the state-law claims they now seek to assert.

We reject both arguments. First, the district court's finding that the settling parties intended to include the Old Jericho Plaintiffs, rather than their Suppliers, in the settlement class is not clearly erroneous under *Fikes*. Second, the Old Jericho Plaintiffs' claims were validly released because they arise out of the same factual predicate as the other class members' claims and were adequately represented in the Settlement Agreement.

7

A.      <u>Class Membership</u>

"In reviewing a district court's interpretation of the terms of a settlement agreement, we review conclusions of law *de novo* and findings of fact for clear error."  *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 135 (2d Cir. 2011).  When a term in a settlement agreement is ambiguous, "principles governing the interpretation of contracts and judgments authorize reference to extrinsic evidence" to resolve the ambiguity and ascertain the settling parties' intent.  *W. Alton Jones Found. v. Chevron U.S.A., Inc.*, 97 F.3d 29, 37 (2d Cir. 1996).  "A trial court's findings regarding the parties' intentions will be respected on appeal unless they are clearly erroneous."  *Id.* at 33.

The Old Jericho Plaintiffs urge a different standard.  They argue that the district court was not free to conduct its own inquiry into the settling parties' intentions and that our opinion in *Fikes* required the district court "to use 'federal antitrust standards' to 'identify the direct payor or payors in any given transaction' and deem that party the Settlement class member."  Reply Br. at 4 (quoting *Fikes*, 62 F.4th at 718).  So they ask us to review *de novo* whether the district court complied with our mandate in *Fikes*.  *Id.* at 4-5 n.1; *see Brown v. City of New York*, 862 F.3d 182, 184 (2d Cir. 2017) *(*"We determine *de novo* the meaning of a previous mandate of this Court.").

1.      Fikes *does not require the district court to use a "direct payor" test to determine class membership*

The Old Jericho Plaintiffs contend that our opinion in *Fikes* required the district court to "identify the direct payor or payors in any given transaction." Appellants' Br. at 29 (quoting *Fikes*, 62 F.4th at 718).  In support, they point to language in *Fikes* stating that "the

*only* entities that could fall within the class definition were those deemed to be *direct payors* of the challenged fees." *Id.* (quoting *Fikes*, 62 F.4th at 716).

This argument overreads our prior decision. We recognized in *Fikes* that "the word 'accepted' lends itself to ambiguity," and concluded that the class was ascertainable because this ambiguity could be resolved by "identifying the direct payor for each transaction." 62 F.4th at 716-17. But opinions are "read with a careful eye to context," and this language must be understood with reference to the "particular context" in which it appears and the "particular work" it does. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023).

*Fikes* addressed an ascertainability challenge to the class action settlement the Old Jericho Plaintiffs contest here. In deciding that issue, "[t]he only relevant inquiry is whether determinations as to class membership are 'objectively *possible*.'" *Fikes*, 62 F.4th at 717 (quoting *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017)). In this context, we explained that the class definition is "objectively guided by federal antitrust standards," so considering class counsel's claim that they represent "the direct purchaser, and not every entity in the payment chain," we concluded that the ascertainability challenge failed because "Appellants do not contend that identifying the direct payor for each transaction is impossible." *Id.* at 716-17.

Our conclusion in *Fikes* about ascertainability does not supplant the general rule that the district court should resolve disputes over class membership by construing the Settlement Agreement "in accord

9

with the parties' intent" as required by New York contract law.[1] *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 441 (2d Cir. 2024) (quotation marks omitted). *Fikes* stated that the class definition is "objectively guided by federal antitrust standards," not that federal antitrust law replaces the parties' intent. 62 F.4th at 716. Moreover, recognizing that the inquiry into class membership might turn on facts not in the appellate record, we made "no ruling as to how damages should be allocated as between branded oil companies and their branded service station franchisees," leaving the district court to consider the issue on a "developed factual record." *Id.* at 727.

We thus reject the argument that *Fikes* reduced all disputes over class membership to a "direct payor" test. This argument conflates the different legal standards governing an ascertainability challenge and a district court's interpretation of a settlement agreement, and it ignores our instruction that the district court decide class membership based on a "developed factual record." *Id.*; *see, e.g.*, *Collins v. Harrison-Bode*, 303 F.3d 429, 434 (2d Cir. 2002) (concluding that a settlement agreement is ambiguous and remanding for "the district court to provide the parties an opportunity to present extrinsic evidence").[2]

---

[1] The Settlement Agreement provides that it "shall be governed, construed, enforced, and administered in accordance with the laws of the State of New York." App'x at 249.

[2] Nor did the district court abuse its discretion by declining to invoke judicial estoppel to bar Defendants from renouncing "the Direct Payor Test." Judicial estoppel typically requires that the party against whom it is being asserted "has succeeded in persuading a court to accept that party's

2.      *The district court did not clearly err in finding that the parties intended the Old Jericho Plaintiffs, not their Suppliers, to be members of the settlement class*

The district court concluded that "the term 'accepted' is ambiguous . . . because suppliers and gas stations can both credibly claim to have 'accepted' payment cards."  Old Jericho Order at *10. After recognizing that the class definition is objectively guided by federal antitrust standards, it turned to extrinsic evidence to decide whether the Old Jericho Plaintiffs or their Suppliers "accepted" payment cards within the meaning of the Settlement Agreement.  *See Revitalizing Auto Cmtys.*, 92 F.4th at 442 ("If a contract is ambiguous, extrinsic evidence of the parties' intent may be considered.").  The district court first considered contracts between the Old Jericho Plaintiffs and their Suppliers, many of which say that the Supplier authorizes the gas station to "accept" cards.  And it reasoned that "the way real-world transactions are conducted supports the conclusion that Old Jericho Plaintiffs . . . 'accept' payment cards" because in a prototypical transaction "the cardholder swipes her card at a gas station, or hands it to the gas station operator, and the gas station 'accepts' the card for payment at the point of sale."  Old Jericho Order at *12.  Further, many of the Old Jericho Plaintiffs contract directly with acquirers for ancillary businesses, such as convenience stores and restaurants, so they accept payment cards for many transactions

---

earlier position" because "absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity."  *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (cleaned up).  As explained, this Court did not accept a "direct payor test."

11

where the Suppliers are not intermediaries. Considering this evidence, the court found that the Old Jericho Plaintiffs, not their Suppliers, "accepted" cards within the meaning of the Settlement Agreement.

Although the Old Jericho Plaintiffs argue that the district court should have considered contrary evidence about the parties' intent, we discern no clear error in the district court's determination that the settling parties intended the Old Jericho Plaintiffs to be class members. *See W. Alton Jones Found.*, 97 F.3d at 33.

B.     Release of Claims

"Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Together, these legal constructs allow plaintiffs to release claims that share the same integral facts as settled claims, provided that the released claims are adequately represented prior to settlement." *Id.* If these two requirements are satisfied, a class action settlement may "bar claims that were not and could not have been asserted in the class action." *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). We agree with the district court that the Settlement Agreement satisfies both requirements.

The Old Jericho Plaintiffs allege that they suffered the same antitrust injury and are harmed by the same interchange fees as the rest of the settlement class. The different factual predicate they identify is "the presence or absence of an intermediary [*i.e.*, the Supplier] between the violator and the purchaser." Appellants' Br. at 65. But this argument ignores the fact that every merchant in the settlement class has an intermediary between it and Defendants. The

12

class plaintiffs allege that when a customer makes a payment, "the Merchant sends an electronic transmission to its Acquiring Bank or Third-Party Processor," which "then sends an electronic transmission to [Defendants'] Networks." Old Jericho Order at *14; *see supra* at 5. The Old Jericho Plaintiffs fail to explain why the presence of a *second* intermediary should be determinative. The class plaintiffs argue that they are direct purchasers with federal antitrust standing despite the presence of intermediaries, while the Old Jericho Plaintiffs assert that they are indirect purchasers and have only indirect-purchaser claims due to the presence of intermediaries.[3] We conclude, as the district court did, that the Old Jericho Plaintiffs are asserting claims based on a different legal theory but the same factual predicate as those in the Settlement Agreement.[4]

Nor are we persuaded by the Old Jericho Plaintiffs' argument that their claims were inadequately represented in the Settlement

---

[3] The parties settled partly to avoid deciding whether merchants or the acquiring banks are direct purchasers under federal antitrust law. This remains an open question: in opt-out litigation, the district court held that there is a "dispute of material fact as to whether merchants are direct purchasers of card-acceptance services" despite the presence of intermediaries. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 1014159, at *13 (E.D.N.Y. Mar. 8, 2024). This appeal is about membership in a class action settlement, not the underlying issues of federal antitrust law, and we express no opinion on this issue.

[4] The submissions of other gas retailers wishing to remain in the settlement class highlight that this is a legal, rather than factual, distinction. For example, Jack Rabbit LLC is a gas retailer similarly situated to the Old Jericho Plaintiffs but draws the opposite legal conclusion and seeks to remain in the settlement class.

Agreement. "[A]dequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim." *Wal-Mart*, 396 F.3d at 113. As we explained in *Fikes*, representation was adequate because both gas franchisees and franchisors "shared an interest in maximizing the recovery for all class members." 62 F.4th at 718. And under the Settlement Agreement, the Old Jericho Plaintiffs were compensated for the release of their claims by entitlement to "a pro rata share of the monetary fund 'in accordance with [their] relative economic interests,'" just like every other class member. *Id.* at 714.[5]

If the Old Jericho Plaintiffs wanted "to avoid the risk of being bound by the Settlement Agreement and the Release, the appropriate course of action was to timely opt out of the Class." Old Jericho Order at *15. They failed to do so, and we agree with the district court that the Settlement Agreement bars the claims they now try to assert.

### III. CONCLUSION

The judgment of the district court is affirmed.[6]

---

[5] A trust account has been established to ensure that the Old Jericho Plaintiffs receive their pro rata portion of the Settlement Amount at the conclusion of this appeal.

[6] Although this panel previously retained jurisdiction in this case, *Fikes*, 62 F.4th at 727 n.18, any subsequent appeal will be assigned to a new panel in the ordinary course.

14